CAROLE CHASE BEARD v. ALBERTA MUNDAY NEWSOME

No. 8421SC1029

(Filed 3 September 1985)

**Chattel Mortgages § 1— transaction either a chattel mortgage or an absolute sale with option to repurchase—directed verdict improper**

The trial court erred by granting a directed verdict for defendant in an action to recover damages for wrongful conversion of personal property where plaintiff had transferred personal property to defendant for $2,557.89; both parties had signed a document labeled "bill of sale and option to repurchase"; the property was stored in a local warehouse at defendant's expense; plaintiff claimed that the agreement was a chattel mortgage and that she was to have access to the property; defendant claimed that the transaction was an absolute sale with an option to repurchase; and defendant eventually sold the property. Evidence that the consideration for the bill of sale was markedly less than the value of the silver, china, crystal, and oil paintings and that plaintiff and defendant would each have access to the stored property created a question for the jury as to whether the transaction was intended as a chattel mortgage. G.S. 25-9-203 (Supp. 1983).

APPEAL by plaintiff from *Collier, Judge.* Judgment entered 29 March 1984 in Superior Court, FORSYTH County. Heard in the Court of Appeals 8 May 1985.

*White and Crumpler, by Robin J. Stinson and David R. Crawford, for plaintiff appellant.*

*Cofer and Mitchell, by William L. Cofer and Dean B. Rutledge, for defendant appellee.*

BECTON, Judge.

This appeal presents the issue whether a certain transaction was, as defendant contends, an absolute sale with an option to repurchase, or, as plaintiff contends, a chattel mortgage. The trial court directed a verdict in favor of the defendant. We conclude that whether the arrangement constituted a sale or a mortgage was a question for the jury, and we therefore reverse and remand for a new trial. We find it unnecessary to discuss the second issue involving certain character and impeachment evidence.

I

Plaintiff, Carole Beard, brought this action to recover damages allegedly sustained as a result of defendant Alberta New-

some's wrongful conversion of her personal property. (The Complaint was later amended to list the specific items of property.) Beard further alleged that Newsome's actions constituted unfair and deceptive trade practices and prayed that damages be trebled. Defendant Newsome answered and counterclaimed. By agreement of the parties, the counterclaims have not yet been tried.

At the close of the evidence at trial, the judge directed a verdict for Newsome on Beard's claims for fraud and unfair trade practices and on the issue of whether the absolute sale with an option to repurchase was intended to be a loan secured by a chattel mortgage. On the sole issue submitted to the jury, the jury found that Newsome had not extended the option date for Beard to repurchase the property. From the judgment entered, Beard appeals.

II

In late 1980, Carole Beard had recently separated from her husband and was in need of money. A friend recommended she contact Alberta Newsome, suggesting that Newsome might be able to help. Although the parties disagree as to whether Beard contacted Newsome or the reverse, they agree that they met at Beard's residence and discussed her financial situation. On 4 November 1980, the parties signed a document entitled "Bill of Sale and Option to Repurchase," in which Beard agreed to sell, and Newsome to purchase, certain items of Beard's personal property, mainly household furnishings, for approximately $2,500. According to this instrument, Beard was granted an option to repurchase the property on or before 1 May 1981 at the price originally paid by Newsome. Beard maintains, and Newsome denies, that the transaction was intended to be a loan secured by the property. The property was stored in a local warehouse at Newsome's expense. Beard stated that she was to have access to the property for the purpose of selling some pieces to raise the money to repay Newsome. Newsome denies any such agreement.

Beard and Newsome further disagree as to what happened after the execution of the document. Beard's testimony was that as the due date approached, she expressed her concern to Newsome that she might not be able to repay the loan on time; that she discussed selling some of the furniture in storage; but that

Newsome reassured her and told her not to worry, everything would be "OK." Beard testified that a few days after the due date, she tendered the amount of the loan to Newsome, but Newsome refused to accept it. Newsome testified to the contrary, stating that she never told Beard not to worry, and Beard never tendered the repurchase price of the furniture. The evidence is uncontradicted that shortly after 1 May 1981, Newsome had the property removed from storage and sold at a public auction.

### III

Beard's principal assignment of error is that the trial court erred in granting Newsome's motion for a directed verdict on whether the transaction in question was a loan or an absolute sale with an option to repurchase, because evidence sufficient to raise a factual issue for the jury was adduced. We agree.

A chattel mortgage is a conditional sale of personal property as security for the payment of a debt or the performance of some other obligation. *Odom v. Clark*, 146 N.C. 544, 60 S.E. 513 (1908); *see* 68 Am. Jur. 2d *Secured Transactions* Sec. 86 (1973). North Carolina accepts the majority common law rule that under certain circumstances a bill of sale, although absolute on its face, may be regarded as a chattel mortgage. *Dukes v. Jones*, 51 N.C. 14 (1858). *See generally* Annot., 33 A.L.R. 2d 364 (1954). In particular, an absolute bill of sale with an accompanying parol agreement that the purchaser will reconvey the property upon the repayment of the money within a certain time is a mortgage, and it will be treated as such. Anonymous, 3 N.C. 26 (1797); *see* 68 Am. Jur. 2d *Secured Transactions* Sec. 97 (1973) & cases at n. 50.[1] These common law rules have apparently survived the adoption of the Uniform Commercial Code. *See* N.C. Gen. Stat. Sec. 25-9-203 official comment 4 (Supp. 1983) ("Under this Article as under prior law a debtor may show by parol evidence that a transfer purporting to be absolute was in fact for security. . . .").

Thus, North Carolina recognizes that a bill of sale with an option to repurchase, absolute on its face, may be treated as a chat-

---

1. When an absolute bill of sale is accompanied by a *written* option to repurchase, it has also been consistently held or recognized that the bill of sale was intended as a chattel mortgage. *See* Annot., 33 A.L.R. 2d 364, Sec. 11 (1954).

tel mortgage. The standard of proof appears to be one of clear, cogent and convincing evidence:

> To convert . . . [an absolute conveyance] into a security for money lent, it must be shown by facts and circumstances dehors the deed, that such was the fact, and those facts and circumstances must be such as, to the apprehension of men versed in business, and judicial minds, are incompatible with the idea of an absolute purchase, and leave no fair doubt that a security only was intended. But parol evidence by itself that, at the time of its execution, it was agreed it should be a mortgage, will not answer.

*Colvard v. Waugh*, 56 N.C. 335, 337 (1857) (emphasis and citation omitted). *But see Whitfield v. Cates*, 59 N.C. 136 (1860) (no conversion of deed absolute into mortgage absent allegation of fraud, imposition, oppression or mistake).

The gist of Newsome's argument is that Beard relied exclusively on her bare assertion that she "thought" the transaction was a loan, and, therefore, it was proper for the trial court to direct a verdict against her. Beard, however, takes the position that evidence of the inadequacy of consideration for the transaction and of joint constructive possession of the property was sufficient to require a jury to consider whether the agreement was intended to be a chattel mortgage. Beard's position has merit.

When the price of property sold is not fairly proportionate to its value, there is a strong indication that the transaction is intended to be a mortgage rather than a sale. *See State v. Snyder*, 71 Idaho 454, 233 P. 2d 802 (1951); *accord* 68 Am. Jur. 2d *Secured Transactions* Sec. 96 (1973) & cases at n. 40. In the case at bar, the purchase price contained in the bill of sale was $2,557.89. Beard testified that the property in question contained enough furniture for a house of four thousand square feet. Before being cut off by objection of defense counsel, Beard said, "[t]here was the equivalent to furnish two living rooms, two formal dining rooms, kitchen and dinette furniture. . . ." Another witness described the property as "the most elegant, beautiful, expensive furniture that money could buy. . . . And a lot of silver, china, crystal, beautiful little oil paintings. Just more than you can dream of." Newsome herself testified that it took "from eight Monday morning until six Monday evening" for the movers to

pack Beard's belongings. This, in our opinion, constitutes ample evidence that the consideration for the bill of sale was markedly less than the value of the property.[2]

> Another factor often considered in determining whether a bill of sale absolute on its face was a chattel mortgage was whether the property remained in the possession of the seller or was delivered to the buyer upon the execution of the instrument.

68 Am. Jur. 2d *Secured Transactions* Sec. 96 (1973) (footnote omitted). The transferor's retention of the property, while not controlling, is some evidence that the parties intended to create a chattel mortgage. *State v. Snyder.* In the instant case, there was evidence that Newsome and Beard agreed that each would have access to the stored property and that Beard could remove and sell some of the items in order to repay Newsome. Although there was contradictory evidence, in ruling upon a motion for a directed verdict, discrepancies in the evidence are to be resolved in favor of the non-movant. *Summey v. Cauthen,* 283 N.C. 640, 197 S.E. 2d 549 (1973). Competent evidence of constructive joint possession by buyer and seller is, then, a further indication that the transaction was intended as a chattel mortgage.

## IV

"A motion for a directed verdict raises the question as to whether there is sufficient evidence to go to the jury. . . . The plaintiff's evidence must be taken as true and be considered in the light most favorable to [her], and a directed verdict may be granted only if, as a matter of law, the evidence is insufficient to justify a verdict for the plaintiff." Shuford, *N.C. Civ. Prac. and Proc.,* Sec. 50-5 (2d ed. 1981) (footnote omitted). Applying this standard to the instant case, we are convinced that a directed verdict was granted erroneously. Evidence of facts and circumstances beyond the deed—particularly of inadequacy of con-

---

2. Beard also contends in a related argument that it was prejudicial error for the trial court not to allow her to testify as to the value of her personal property. Her contention is without merit. Beard was never specifically asked the value of the property. An objection was sustained to a narrative by Beard describing the property, but no offer of proof was ever made as to what she would have answered. In any event, we find that no prejudice adhered to Beard because there was ample evidence concerning the amount and value of the property.

sideration and constructive joint possession — create a question for the jury as to whether the transaction was intended as a chattel mortgage. Accordingly, the directed verdict is reversed, and the cause is remanded for a

New trial.

Judges WELLS and EAGLES concur.