07-1854-bk
In re: The Penn Traffic Company, et al., Reorganized Debtors

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term 2007

(Submitted:  September 27, 2007                    Decided: April 29, 2008)

Docket No. 07-1854-bk

IN RE:  THE PENN TRAFFIC COMPANY, ET AL., REORGANIZED DEBTORS
_____

COR ROUTE 5 COMPANY, LLC,

*Appellant,*

— v. —

THE PENN TRAFFIC COMPANY,

*Debtor-Appellee.*

_____

Before:

MINER and WESLEY, *Circuit Judges,*
SWAIN, *District Judge.*[*]

_____

_____

    [*]    The Honorable Laura Taylor Swain of the United States District Court for the Southern District of New York, sitting by designation.

Appeal from order of United States District Court for the Southern District of New York (Buchwald, J.) affirming order of United States Bankruptcy Court for the Southern District of New York (Hardin, B.J.) authorizing debtor's rejection of an executory contract. Affirmed.

_____

C. MacNeil Mitchell, Winston & Strawn LLP (Justin E. Rawlins and Sarah L. Trum, on the brief), New York, NY, and Robert Kenneth Weiler, Green & Seifer, Attorneys, PLLC, Syracuse, NY, *for Appellant*.

Kelly A. Cornish, Paul, Weiss, Rifkind, Wharton & Garrison LLP (Allan Arffa and Ross B. Rosenfelt, on the brief), New York, NY, *for Debtor-Appellee*.

_____

SWAIN, District Judge:

This matter comes before us on the appeal of COR Route 5 Company, LLC ("COR" or "Appellant"), from a consent order of the United States District Court for the Southern District of New York (Buchwald, J.), affirming a stipulated bankruptcy court order authorizing the rejection of a supermarket construction, land sale and leaseback contract.[1] An earlier appeal of Judge Buchwald's 2005 order affirming in part, reversing in part and remanding a 2005 order of the United States Bankruptcy Court for the Southern District of New York (Hardin, B.J.) in which the Bankruptcy Court, finding that the contract was non-executory as of the time the debtor had moved to reject it and for that reason denying the motion to reject, was dismissed by this Court in 2006 for lack of jurisdiction. See COR Route 5 Co., LLC v. The Penn Traffic Co. (In re The Penn Traffic Co.), 466 F.3d 75 (2d Cir. 2006) ("Penn Traffic III"). The consent order from which COR appeals explicitly provided for the preservation in this appeal of

_____

[1] The parties refer to the bankruptcy court order in some of their papers as the "Bankruptcy Court Rejection Order." We do likewise below.

the issues raised in the initial appeal, by "restat[ing] and reissu[ing]" the District Court's opinion in The Penn Traffic Co. v. COR Route 5 Co., LLC (In re The Penn Traffic Co.), No. 05 Civ. 3755 (NRB), 2005 WL 2276879 (S.D.N.Y. Sept. 16, 2005) ("Penn Traffic II") "as the Memorandum and Order of this Court on the Second District Court Appeal from the Bankruptcy Court Rejection Order," and affirming the Bankruptcy Court Rejection Order without prejudice to the parties' rights to appeal. (Mem. and Order Deciding Appeal from Order of Bankruptcy Ct. at 3, Apr. 9, 2007.)

## BACKGROUND

I.     Underlying Transaction and Initial Proceedings on Motion to Reject

The background facts of this matter are detailed extensively in the opinions below, familiarity with which is assumed. See In re The Penn Traffic Co., 322 B.R. 63 (Bankr. S.D.N.Y. 2005) ("Penn Traffic I"); Penn Traffic II. For the instant purposes, repetition of the background summary from Penn Traffic III will suffice. COR is a commercial real estate developer whose holdings include certain tracts of land near a shopping mall known as Towne Center, in Fayetteville, New York. Debtor-Appellee The Penn Traffic Company ("Penn Traffic" or "Debtor-Appellee"), the debtor-in-possession in the underlying chapter 11 reorganization proceeding, is one of the leading food retailers in the United States. Penn Traffic owned land with a building, adjacent to the Towne Center, that could not have been developed into a modern suburban supermarket as part of the Towne Center without the inclusion of contiguous and connecting real property owned by COR.

Prior to the commencement of Penn Traffic's bankruptcy case, COR and Penn Traffic entered into a "Project Agreement" providing for, inter alia, the exchange of certain

parcels of land, the site preparation and construction of a modern supermarket, reimbursement by COR to Penn Traffic of a specified portion of the construction costs, Penn Traffic's conveyance to COR of the parcel of land on which the supermarket is situated, and Penn Traffic's leaseback of the improved supermarket parcel from COR. At the time of Penn Traffic's bankruptcy filing, COR had performed all of its obligations under the Project Agreement except for the reimbursement of the construction costs (amounting to approximately $3.5 million) and the tender of a lease to Penn Traffic. Penn Traffic had not conveyed the supermarket parcel to COR.

Several months after Penn Traffic filed its bankruptcy petition, COR wrote a letter to Penn Traffic in which, the Bankruptcy Court found, COR tendered reimbursement of the $3.5 million in construction costs, as well as a signed lease, as called for by the Project Agreement. Penn Traffic declined to accept COR's tender and, several months thereafter, moved pursuant to § 365 of the Bankruptcy Code (the "Code")[2] to reject the Project Agreement.

The Bankruptcy Court held that, while the Project Agreement was executory on the petition date (in that both sides had subsisting, unperformed obligations at that time), COR's post-petition tender of the payment and the lease had rendered the Project Agreement non-executory and thus incapable of rejection. The Bankruptcy Court, accordingly, denied Penn Traffic's motion to reject the Project Agreement on the ground that the Project Agreement was non-executory. Noting briefly the deferential standard applied to debtors' business judgments as to whether to assume or reject executory contracts, the Bankruptcy Court observed that:

---

[2]     Together, §§ 365(a) (relating to executory contracts and unexpired leases) and 1107(a) (providing that a debtor-in-possession generally has the rights of a trustee in bankruptcy) of the Code generally permit a chapter 11 debtor-in-possession to assume or reject, subject to the court's approval, any executory contract or unexpired lease of the debtor. See 11 U.S.C. §§ 365(a), 1107(a).

4

> [t]he debtor's decision to reject the Project Agreement, if found executory, appears to meet the low threshold of the business judgment test, in that the debtor has obtained an appraisal of the fair market value of the Penn Traffic Supermarket Parcel at $9.8 million, contrasted with the $3.5 million reimbursement of the Construction Allowance which triggers the debtor's contractual duty to convey title to the Penn Traffic Supermarket Parcel to COR.

Penn Traffic I, 322 B.R. at 68. Penn Traffic appealed the Bankruptcy Court's order to the District Court, which affirmed the Bankruptcy Court's determination that the Project Agreement had been an executory contract as of the petition date but rejected the Bankruptcy Court's holding that executory contract status should be determined as of the rejection motion date and take into account post-petition performance. The District Court reversed the latter aspect of the decision, holding that "post-petition performance cannot alter the executoriness of a contract," and remanded the matter "to the Bankruptcy Court for further proceedings consistent with this opinion." Penn Traffic II, 2005 WL 2276879, at *6.

II.     Initial Appeal and Proceedings on Remand

COR appealed Judge Buchwald's decision to this Court, arguing that the Bankruptcy Court had correctly found that the Project Agreement was no longer executory and thus could not be rejected. In Penn Traffic III, we explained that we lacked jurisdiction of the appeal because Penn Traffic II's remand provision contemplated significant further Bankruptcy Court proceedings and thus was not a final order within the meaning of 28 U.S.C. § 158(d).

Following our dismissal of the appeal for lack of jurisdiction, the Bankruptcy Court entered the Bankruptcy Court Rejection Order. Among other things, the Bankruptcy Court Rejection Order held that rejection of the Project Agreement was in the debtor's best interests and provided that COR was not, by agreeing to entry of the order, waiving its positions that the

5

Project Agreement was not an executory contract at all and that, in any event, the Project Agreement was not executory at the time Penn Traffic moved to reject it.  On the appeal of the Bankruptcy Court Rejection Order to the District Court, that Court, as noted above, entered a stipulated Memorandum and Order Deciding Appeal from Order of Bankruptcy Court reinstating and reissuing its Penn Traffic II decision and affirming the Bankruptcy Court Rejection Order without prejudice to the parties' appellate rights.  This appeal followed.

We have jurisdiction of this appeal pursuant to 28 U.S.C. § 158(d)(1), because the District Court's April 6, 2007, Memorandum and Order constitutes a final order.  Fed R. App. P. 6(b).  We review de novo the legal determinations below; the factual determinations of the Bankruptcy Court in this core proceeding are reviewed for clear error.  Fed. R. Bankr. P. 8013.

## DISCUSSION

The principal issue presented on this appeal is whether the non-debtor party to a contract that is executory at the time a bankruptcy case is commenced can, by post-petition tender or performance of its own outstanding obligations under the contract, deprive the debtor party of the ability to exercise its statutory right to reject the contract as disadvantageous to the estate.  We hold that it cannot.

Section 365 of the Code (when read alongside § 1107, see note 2, supra) provides that, with exceptions not pertinent here, a trustee or chapter 11 debtor-in-possession may, with court approval, assume or reject any executory contract or unexpired lease of the debtor.  11 U.S.C. § 365(a).[3]  Assumption is in effect a decision to continue performance.  It requires the

---

[3]     For simplicity, the term "debtor" is at times used in this discussion to refer to the chapter 11 debtor-in-possession.

debtor to cure most defaults and continues the parties' rights to future performance under the contract or lease. See 11 U.S.C. § 365(b). Rejection is in effect a decision to breach the contract or lease. See 11 U.S.C.A. § 365(g) (West 2004) ("[T]he rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease . . . immediately before the date of the filing of the petition."). In the event of rejection, the non-debtor party is generally relegated to pursuing an unsecured prepetition claim against the estate. In re Child World, Inc., 147 B.R. 847, 852 (Bankr. S.D.N.Y. 1992) ("[R]ejection under 11 U.S.C. § 365(a) simply means that the court will permit the debtor to breach the contract, with the result that the contractual obligations will be reduced to general unsecured claims for prepetition damages pursuant to 11 U.S.C. § 365(g)(1)."). Where assets of the estate are insufficient to pay unsecured creditors in full, the non-debtor party to a rejected executory contract, like other unsecured creditors of the estate, may receive only a fraction of the value of its claim.

The plain language of the Code permits a chapter 11 trustee (and, by extension through § 1107, a debtor-in-possession) to assume or reject the executory contract "at any time before the confirmation of a plan." 11 U.S.C.A. § 365(d)(2) (West 2004). A counterparty desiring an earlier determination of the debtor's course of action regarding assumption or rejection of the agreement may petition the court to order the debtor to make its determination within a specified period of time. Id.

The Code does not define the term "executory contract." In Eastern Air Lines, Inc. v. Ins. Co. of Pa. (In re Ionosphere Clubs, Inc.), 85 F.3d 992 (2d Cir. 1996), we characterized an executory contract as one "on which performance remains due to some extent on both sides," id. at 998-99 (quoting Nat'l Labor Relations Bd. v. Bildisco & Bildisco, 465 U.S. 513, 522 n.6

7

(1984)) (internal quotation marks omitted), but we were not called upon to address the question of how much performance must be outstanding for the contract to be treated as executory under § 365. In addressing that question, most courts and scholars look to the standard first articulated by Professor Vernon Countryman in his seminal 1973 law review article regarding treatment of contracts under the former Bankruptcy Act—i.e., that an executory contract is one "under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. 439, 460 (1973); see 3 Collier on Bankruptcy ¶ 365.02[1] (15th ed. rev. 2007).

We do not have to determine the precise contours of the test for executoriness to resolve the issues here on appeal because, as the Bankruptcy Court found, the parties' unperformed obligations under the Project Agreement satisfied the Countryman standard as of the petition filing date:

> Applying what may be referred to . . . as the "substantial performance" test[4] . . . , it is clear that the Project Agreement was an executory contract upon the date of filing of the Penn Traffic Chapter 11 petition, because on that date, May 30, 2003, COR had not paid or tendered reimbursement of the $3.5 million required of it under Section 4.3 of the Project Agreement as a precondition of its right to conveyance to it of title to the Penn Traffic Supermarket Parcel.

Penn Traffic I, 322 B.R. at 69.

COR contends, however, that the Project Agreement should not be treated as an executory contract at all. Invoking the familiar principle that a court properly looks beyond the form or title of an agreement to determine the true nature of the transaction, see e.g., Liona Corp.,

---

[4] The Bankruptcy Court used the term "'substantial performance' test" to describe the Countryman standard. See Penn Traffic I, 322 B.R. at 69.

8

N.V. v. PCH Assocs. (In re PCH Assocs.), 804 F.2d 193, 197 (2d Cir. 1986), COR argues that the Project Agreement should be treated as a "financing lease," a "prepaid option" or a form of secured real estate transaction, and that any such treatment precludes the application of the rules governing executory contracts to Penn Traffic's rights and obligations under the Project Agreement. The Bankruptcy Court, which analyzed the Project Agreement under the executory contract rules, see Penn Traffic I, 322 B.R. at 68-71, implicitly rejected COR's attempt to take the matter outside those rules. The District Court explicitly addressed and rejected COR's arguments in this regard. Penn Traffic II, 2005 WL 2276879, at *3-4.

The courts below properly rebuffed COR's attempt to avoid application of § 365 of the Code to the parties' rights and obligations under the Project Agreement. COR's "financing lease" argument focuses on our holdings in In re PCH Assocs. and Int'l Trade Admin. v. Rensselaer Polytechnic Inst., 936 F.2d 744 (2d Cir. 1991), both of which addressed the applicability to certain contractual relationships of special Code provisions dealing with the treatment of unexpired leases in bankruptcy proceedings. See In re PCH Assocs., 804 F.2d at 194 (addressing applicability of § 365(d)(3), (d)(4)); Int'l Trade Admin., 936 F.2d at 745-46 (addressing applicability of § 365(d)(4)); see also 11 U.S.C. § 365(d)(5). In each case, the relationship at issue was denominated as a leasehold but was found to be something other than a true lease, and the Code provisions at issue on appeal were found to be inapplicable. These decisions were not at all concerned with the construction of the term "executory contract," however, and thus provide no support for COR's argument that the Project Agreement is not executory.

COR's "prepaid option" argument is equally unavailing. While some courts have

9

held that options contracts under which the optionee fully paid its price for the option to buy property before the debtor filed for bankruptcy are not executory (because no performance is due from the optionor unless the option is exercised), see, e.g., Unsecured Creditors' Comm. of Robert L. Helms Constr. & Dev. Co. v. Southmark Corp. (In re Robert L. Helms Constr. & Dev. Co.), 139 F.3d 702, 706 (9th Cir. 1998) (option contract not executory if optionee did not exercise option prior to petition's filing); Brown v. Snellen (In re Giesing), 96 B.R. 229, 232 (Bankr. W.D. Mo. 1989) (option contract not executory), and others treat such contracts as executory, see, e.g., In re Simon Transp. Servs., 292 B.R. 207, 219-20 (Bankr. D. Utah 2003) (option contracts executory); In re A.J. Lane & Co., Inc., 107 B.R. 435, 437 (Bankr. D. Mass. 1989) (same), there is no factual basis for application of the prepaid option analysis in this matter because it is undisputed that COR had an unsatisfied contractual obligation to pay some $3.5 million as of the petition date.

COR's secured real estate purchase transaction argument focuses on the aspects of the Project Agreement that call for exchanges and transfers of particular parcels of property. COR argues that the outstanding real property transfer aspect of the Project Agreement constitutes a provision for the return or redemption of property securing the money advanced under the agreement for construction of the supermarket, alluding to decisions in which courts have found that property transactions in which the seller retains possession of, or title to, the property until payment in full has been made may constitute secured transactions under applicable law outside the bankruptcy context. See, e.g., In re Pearson Indus., Inc., 142 B.R. 831, 838-39 (Bankr. C.D. Ill. 1992) (applying law of secured transactions where purpose of seller's retention of title was to ensure payment); Beard v. Newsome, 333 S.E.2d 527, 530 (N.C. Ct.

10

App. 1985) (whether property remained in possession of seller is a factor in determining whether property transaction was actually a mortgage); see 3 Collier on Bankruptcy ¶ 365.02[1][a] (15th ed. rev. 2007). The Project Agreement, however, involved multiple transfers of property and money conditioned on obligations to be performed at various times by the two parties. COR's attempt to analogize this complex arrangement to a simple purchase of property with title retained until payment has been made in full, or a simple loan secured by a pledge of property, is untenable. Furthermore, the analogy necessarily fails because the supermarket parcel that the Project Agreement requires Penn Traffic to transfer to COR upon repayment of the construction costs includes property that never belonged to COR. See Penn Traffic I, 322 B.R. at 66 ("The 7.2 acre parcel containing the [s]upermarket and adjacent parking lots . . . consists of the land originally owned by Penn Traffic, augmented by the Developer's Swap Parcel and construction of the [s]upermarket and diminished by the Owner's Swap Parcel conveyed to COR.").

Accordingly, the courts below properly determined that the Project Agreement was an executory contract within the meaning of § 365 of the Code as of the date Penn Traffic commenced its chapter 11 bankruptcy proceeding.

Executoriness and the debtor's rights with respect to assumption or rejection of an executory contract are normally assessed as of the petition date (the date on which a voluntary bankruptcy such as Penn Traffic's is commenced). In re Riodizio, Inc., 204 B.R. 417, 421 (Bankr. S.D.N.Y. 1997). Some courts have, however, denied debtors' post-petition attempts to assume or reject contracts that were executory "as of the petition date" in light of post-petition events affecting those contracts. COR relies on general statements in such decisions to the effect that "events after the filing of the bankruptcy petition may cause the contract to be regarded as

11

not executory when the motion to assume or reject was made," see e.g., In re Child World, Inc., 147 B.R. 847, 852 (Bankr. S.D.N.Y. 1992), in arguing that where, as in this case, the non-debtor party to the contract has rendered (or at least tendered) its remaining performance post-petition under a contract that was executory at the petition date, the contract is no longer executory.

The cases in which the post-petition evaluation principle has been invoked to find that formerly executory contracts had lost their executory status by the time the debtor made its motion to assume or reject do not, however, provide support for the notion that a non-debtor party's unilateral post-petition actions can vitiate the executory status of a contract where the debtor has done no more than exercise its Code-granted right to enjoy "breathing space" while deciding whether to assume or reject the contract. Rather, courts have looked to the impact of post-petition events where the contract expired post-petition by its terms, such that there were no longer any obligations to assume or reject, or where the debtor itself had taken affirmative action under a contract that affected the existence of outstanding performance obligations. See e.g., Counties Contracting & Constr. Co. v. Constitution Life Ins. Co., 855 F.2d 1054, 1061 (3d Cir. 1988) ("A contract may not be assumed under § 365 if it has already expired according to its terms."); In re Spectrum Info. Techs., Inc., 193 B.R. 400, 404 (Bankr. E.D.N.Y. 1996) (finding employment agreement no longer executory where debtor discharged employee after petition was filed and prior to motion to reject agreement, as employee "no longer had any material unperformed obligations under the . . . [a]greement"); In re Total Transp. Serv., Inc., 37 B.R. 904, 906 (Bankr. S.D. Ohio 1984) (holding collective bargaining agreement no longer executory where enterprise ceased operations post-petition and "there can be no future performance by either the employer or union members . . . of . . . [their] obligations"); In re Pesce Baking Co.,

12

Inc., 43 B.R. 949, 957 (Bankr. N.D. Ohio 1984) (holding that collective bargaining agreement that expired by its own terms prior to hearing on motion to reject was no longer executory because "there can be no performance by either party under the terms of the agreement"). In the instant matter, by contrast, the Project Agreement had not expired at the time of Penn Traffic's rejection motion, nor had Penn Traffic taken any affirmative action affecting the existence of outstanding performance obligations.

Sympathy for the non-debtor that may, through no fault of its own, bear some significant burden from the debtor's rejection of an executory contract due to the happenstance of an unforeseen bankruptcy proceeding is understandable. The notion that a non-debtor could prevent the exercise of § 365 rights with regards to an executory contract through post-petition performance of the non-debtor's contractual obligations is, however, inconsistent with both the plain language and the policy of the Code. As for the language of the statute, §§ 365 and 1107 expressly permit a chapter 11 debtor to move to assume or reject an executory contract at any time before the confirmation of a plan unless the court orders it to make an earlier determination. See 11 U.S.C. §§ 365(a), 365(d)(2), 1107(a). The Code does not condition the right to assume or reject on lack of prejudice to the non-debtor party, and the satisfaction of claims at less than their full non-bankruptcy value is common in bankruptcy proceedings, as is the disruption of non-debtors' expectations of profitable business arrangements.

As for policy, we have noted that "[t]he main purpose of Section 365 is to allow a debtor to reject executory contracts in order to relieve the estate of burdensome obligations while at the same time providing 'a means whereby a debtor can force others to continue to do business with it when the bankruptcy filing might otherwise make them reluctant to do so.'" Frito-Lay,

13

Inc. v. LTV Steel Co., Inc. (In re Chateaugay Corp.), 10 F.3d 944, 954-55 (2d Cir. 1993) (quoting

Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1310 (5th Cir. 1985)).

> Ordinarily, the [chapter 11] debtor need not commit itself to assumption or rejection of such a contract until a reorganization plan is confirmed.  In the meantime, the executory contract remains in effect and creditors are bound to honor it.  If and when assumed, the contract operates according to its tenor. . . .  Parties who wish to know where they stand may, pursuant to 11 U.S.C. § 365(d)(2), seek to compel an early election. . . .  But there is no assurance that the judge will acquiesce.  The interests of the creditors collectively and the bankrupt estate as a whole will not yield easily to the convenience or advantage of one creditor out of many.

Pub. Serv. Co. of N.H. v. N.H. Elec. Coop. (In re Pub. Serv. Co. of N.H.), 884 F.2d 11, 14-15

(1st Cir. 1989) (citations omitted).  "In short, § 365 permits the trustee or debtor-in-possession,

subject to the approval of the bankruptcy court, to go through the inventory of executory

contracts of the debtor and decide which ones it would be beneficial to adhere to and which ones

it would be beneficial to reject."  Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion

Pictures Corp.), 4 F.3d 1095, 1098 (2d Cir. 1993).

However long this process may take, however onerous the dilemmas faced by the

non-debtor party to an executory contract may be while the non-debtor awaits the debtor's

decision, and whether or not the bankruptcy judge grants a motion by the non-debtor party to

accelerate the debtor's timetable for making its election to assume or reject, the power to make

that election is, as we made clear in In re Chateaugay Corp., that of the debtor alone.  10 F.3d at

955 ("Section 365 does not confer any power of election upon the other contracting party.");

accord, In re Pub. Serv. Co. of N.H., 884 F.2d at 15 ("The Bankruptcy Code places the option of

assuming or rejecting executory contracts with the debtor, not with its business partners.  To

disturb this mechanism would unbalance the Code's overriding policy favoring debtor

14

reorganization and rehabilitation.").

That the debtor's interests are paramount in the balance of control is underscored by the business judgment standard employed by courts in determining whether to permit the debtor to assume or reject the contract. See Orion Pictures, 4 F.3d at 1099 ("[B]ankruptcy court reviewing a trustee's or debtor-in-possession's decision to assume or reject an executory contract should examine a contract and the surrounding circumstances and apply its best 'business judgment' to determine if it would be beneficial or burdensome to the estate to assume it. . . . [T]he process of deciding a motion to assume is one of the bankruptcy court placing itself in the position of the trustee or debtor-in-possession and determining whether assuming the contract would be a good business decision or a bad one." (citations omitted)); Sundial Asphalt Co. v. V.P.C. Investors, Corp. (In re Sundial Asphalt Co.), 147 B.R. 72, 81 (E.D.N.Y. 1992) ("Under the 'business judgment' test, an executory contract . . . should be rejected if the debtor can demonstrate that rejection will benefit the estate." (citation omitted)). This standard rather obviously presupposes that the estate will assume a contract only where doing so will be to its economic advantage and will reject contracts whose performance would benefit the counterparty at the expense of the estate.

The Code provisions permitting a debtor to accept or reject an executory contract do not alter the parties' contractual rights. The terms of the contract are unchanged and thus, as shown above, where the contract expires by its own terms in the course of the bankruptcy, or the debtor takes action in the course of the bankruptcy to terminate the outstanding obligations, the contract's mere executory nature as of the commencement of the proceeding—without more—will not guarantee the debtor the availability of § 365's assumption and rejection provisions.

15

Where, however, the parties' rights under the terms of their pre-petition agreement have not been altered or extinguished by operation of nonbankruptcy law, both parties remain subject to the contractual obligations, and rejection of the contract constitutes a breach. In the event of rejection of such an executory contract, the Code governs the treatment of the non-debtor party's resulting claim within the bankruptcy proceeding.

Here, neither the terms of the Project Agreement nor any applicable principles of nonbankruptcy law warrant deviation from the general rule requiring treatment of the Project Agreement, which was executory as of the commencement of Penn Traffic's bankruptcy proceeding, as executory notwithstanding COR's attempt to complete its performance. We have considered COR's remaining arguments for reversal of the District Court's decision and find them, similarly, without merit.[5]

Accordingly, the District Court properly held in Penn Traffic II that the Project

---

[5]     COR also argues that, even if Penn Traffic properly rejected the Project Agreement, COR is not limited to a general unsecured claim against the estate. COR contends that it is entitled to invoke the benefit of § 365(i) and/or (j) of the Code (which provide counterparties to certain rejected executory real estate sales or purchase contracts with rights to particular elements of relief), or to obtain specific performance of the Project Agreement. Because these arguments anticipate issues that may arise in claims-adjudication proceedings that have not yet commenced, we think it best to permit the Bankruptcy Court to consider these arguments in the first instance.

COR also relies upon Columbia County Indus. Dev. Agency v. Hudson Valley Care Ctrs., Inc., No. 1:06-CV-1158 (LEK), 2007 WL 2261585 (N.D.N.Y. Aug. 2, 2007), in a submission to this Court pursuant to Federal Rule of Appellate Procedure 28(j). That reliance is misplaced. Columbia County is clearly distinguishable from the present case in several respects. Most obviously, Columbia County did not discuss the specific issue before us here – whether post-petition performance by the non-debtor party to a contract may render a contract non-executory for purposes of § 365 of the Bankruptcy Code. Aside from the fact that this case presents a question not resolved by the district court in Columbia County, we are satisfied, in any event, that there was far greater performance by the appellant there, and that the unique tax policy concerns in that case are here without parallel.

16

Agreement remained executory as of the time Penn Traffic moved to reject it, and the District Court's subsequent order affirming the Bankruptcy Court's grant of the motion to reject the Project Agreement is hereby affirmed.

## CONCLUSION

The April 9, 2007, Memorandum and Order Deciding Appeal from Order of Bankruptcy Court is affirmed.

17