**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MELISSA CARIN MATHER BOBKA,
                *Appellant*,

     v.

TOYOTA MOTOR CREDIT
CORPORATION,
                *Appellee*.

No. 18-55688

D.C. No.
3:17-cv-02380-
GPC-AGS

OPINION

Appeal from the United States District Court
for the Southern District of California
Gonzalo P. Curiel, District Judge, Presiding

Argued and Submitted October 16, 2019
Pasadena, California

Filed August 3, 2020

Before: Jacqueline H. Nguyen and Eric D. Miller, Circuit
Judges, and Eric N. Vitaliano,* District Judge.

Opinion by Judge Miller

---

*The Honorable Eric N. Vitaliano, United States District Judge for
the Eastern District of New York, sitting by designation.

## SUMMARY[**]

### Bankruptcy

The panel affirmed the district court's affirmance of the bankruptcy court's ruling that a creditor's post-discharge collection efforts on a vehicle lease did not violate the discharge injunction in a Chapter 7 case.

The debtor sent the creditor a signed lease assumption agreement before she received her bankruptcy discharge. The panel held that debtors' lease assumptions survive discharge even if they are not reaffirmed under 11 U.S.C. § 524(c). The panel also held that the debtor and the creditor mutually waived the procedural requirements for a lease assumption by a debtor under § 365(p).

### COUNSEL

Michael G. Doan (argued), Doan Law Firm, Oceanside, California, for Appellant.

Aaron J. Malo (argued) and Karin Dougan Vogel, Sheppard Mullin Richter & Hampton LLP, San Diego, California, for Appellee.

Jan T. Chilton and Mark Joseph Kenney, Severson & Werson, San Francisco California, for Amicus Curiae American Financial Services Association.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Tara Twomey, National Consumer Bankruptcy Rights Center, San Jose, California, for Amici Curiae National Consumer Bankruptcy Rights Center and National Association of Consumer Bankruptcy Attorneys.

## OPINION

MILLER, Circuit Judge:

When Melissa Mather Bobka filed for Chapter 7 bankruptcy, she wanted to keep her leased Toyota Rav4. She called Toyota and was told that to keep the vehicle, she would need to assume the lease. Two months later, Mather sent Toyota a signed assumption agreement. She received her bankruptcy discharge the next day.

By then, Mather had stopped making lease payments, and when Toyota sought to collect Mather's past-due balance, she refused to pay. Mather asserted that her obligations under the lease did not survive the bankruptcy discharge because the assumption agreement had not been reaffirmed under 11 U.S.C. § 524(c). When Toyota continued its collection efforts, Mather sought sanctions, alleging that Toyota had violated section 524's discharge injunction. She also argued that the assumption agreement was independently invalid because she and Toyota had not followed the required procedures for a lease assumption under 11 U.S.C. § 365(p).

The bankruptcy court and the district court rejected Mather's interpretation of the Bankruptcy Code. We agree with both courts that lease assumptions survive discharge even if they are not reaffirmed, and that Mather and Toyota mutually waived section 365(p)'s procedural requirements. We therefore affirm.

I

In 2016, Mather filed a petition for bankruptcy under Chapter 7. She listed $51,252 in assets—consisting primarily of a Toyota Tundra and a Toyota Rav4—against $145,411 in liabilities. In her statement of intention filed with the petition, Mather mistakenly described Toyota as the owner of a secured claim against the Rav4, rather than as a lessor, and stated her intent to reaffirm what she described as a secured debt.

When a debtor enters Chapter 7 bankruptcy, the creditors appoint a trustee, who is responsible for administering the bankruptcy estate, and who has authority to assume or reject any unexpired contracts—including leases—to which the debtor is a party. 11 U.S.C. §§ 365(a), 365(d)(1), 702. If the trustee assumes the lease, the estate is liable for the debtor's obligations under the lease, and in exchange, the estate can obtain the benefits of the lease. *Id*. § 365(b)(1), (e)(1). If the trustee rejects the lease, the rejection is deemed a breach of the lease, and the claim created by that breach is treated as one that arose before the petition was filed. *Id*. § 502(g)(1).

Before 2005, only the trustee could assume or reject a lease. Trustees ordinarily did not assume individual debtors' leases of personal property because doing so would not benefit the creditors or the estate. But in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub. L. No. 109-8, § 309(b), 119 Stat. 23, 82, Congress added section 365(p), which allows the debtor to assume a lease of personal property. 11 U.S.C. § 365(p). Paragraph (2) of that subsection provides:

> (A) If the debtor in a case under chapter 7 is an individual, the debtor may notify the creditor in writing that the debtor desires to

assume the lease. Upon being so notified, the creditor may, at its option, notify the debtor that it is willing to have the lease assumed by the debtor and may condition such assumption on cure of any outstanding default on terms set by the contract.

(B) If, not later than 30 days after notice is provided under subparagraph (A), the debtor notifies the lessor in writing that the lease is assumed, the liability under the lease will be assumed by the debtor and not by the estate.

(C) The stay under section 362 and the injunction under section 524(a)(2) shall not be violated by notification of the debtor and negotiation of cure under this subsection.

*Id*. § 365(p)(2).

Although Mather sought to keep her leased Rav4, she did not follow the procedures set out in section 365(p)(2). On September 8, 2016, Mather called Toyota to ask about keeping the vehicle. Toyota's agent told Mather that she would need to enter into a lease assumption. The agent did not ask Mather to confirm her request in writing as required by section 365(p)(2)(A), and she did not do so. Instead, the agent sent an assumption agreement to Mather and her attorneys, explaining that the agreement would constitute an assumption of the lease effective upon Toyota's receipt of the signed agreement. Mather did not return the agreement until December 5—well more than 30 days after she orally informed Toyota that she wished to keep her leased vehicle. Mather received her bankruptcy discharge the next day.

Although Mather was current on her lease when she entered bankruptcy, she began missing payments in November 2016. After the discharge was entered, Toyota contacted Mather to recover the missed payments. Mather ultimately surrendered the Rav4, but she did not pay back her overdue balance on the lease. She told Toyota that the debt had been discharged in bankruptcy, and she denied that her assumption of the lease was effective.

Toyota continued its collection efforts, and Mather responded by seeking relief in the bankruptcy court, including an injunction, sanctions, fees, and more than $50,000 in damages. In her request for an order to show cause, Mather alleged that Toyota had violated the automatic stay by sending her the lease assumption agreement, *see* 11 U.S.C. § 362, and that its collection efforts violated the discharge injunction, *see id.* § 524(a)(2). According to Mather, obligations under a lease survive discharge only if they are reaffirmed under section 524(c). That statute provides that "[a]n agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable . . . is enforceable only to any extent enforceable under applicable nonbankruptcy law," and only if certain procedural requirements are met, including that (1) the debtor received certain disclosures, and (2) the agreement has been filed with the court together with a declaration from the debtor's attorney stating that the agreement is fully informed and voluntary and does not impose an undue hardship. *Id.* § 524(c). If the debtor was unrepresented while negotiating the agreement, the court must approve the agreement before it can become effective. *Id.* § 524(c)(6)(A).

The bankruptcy court rejected Mather's claims, concluding that a lease assumption under section 365(p)

need not comply with the reaffirmation procedures of section 524(c). The bankruptcy court also held that Mather had successfully assumed the lease, despite the procedural infirmities in her agreement with Toyota. The district court affirmed.

## II

We begin by considering whether a lease assumption can survive discharge even though it is not reaffirmed. That is a purely legal issue, so our review is de novo. *See Blausey v. U.S. Tr.*, 552 F.3d 1124, 1132 (9th Cir. 2009) (per curiam).

The question of statutory interpretation presented here turns on the resolution of an apparent conflict between sections 365(p) and 524(c). Normally, when a bankruptcy proceeding ends, the debtor is "discharge[d] . . . from all debts that arose before the date of the order for relief." 11 U.S.C. § 727(b). Section 524(c) provides for a limited exception to that rule by allowing an agreement "based on a debt that is dischargeable" to be reaffirmed and thus remain enforceable after discharge. *Id.* § 524(c). But reaffirmation can occur only when the debtor receives certain procedural protections, including the involvement of the bankruptcy court. *Id.* On the other hand, section 365(p) provides that when a lease is assumed, "the liability under the lease will be assumed by the debtor and not by the estate." *Id.* § 365(p)(2)(B). In Mather's view, section 365(p) would conflict with section 524(c) if it allowed a lease assumption agreement to survive discharge, because such an agreement would be "based on a debt that is dischargeable" and thus would need to meet the conditions of section 524(c) before a lessor could enforce it against a lessee. No court of appeals has yet considered whether lease assumptions under section 365(p) require reaffirmation under section 524(c), and bankruptcy courts have reached differing conclusions.

*Compare, e.g.*, *In re Anderson*, 607 B.R. 133 (Bankr. D. Mass. 2019) (lease assumption does not require reaffirmation), *In re Abdemur*, 587 B.R. 167 (Bankr. S.D. Fla. 2018) (same), *and In re Ebbrecht*, 451 B.R. 241 (Bankr. E.D.N.Y. 2011) (same), *with In re Rogers*, 359 B.R. 591 (Bankr. D.S.C. 2007) (lease assumption requires reaffirmation), *and In re Creighton*, 427 B.R. 24 (Bankr. D. Mass. 2007) (same).

According to Mather, the text of section 365(p) indicates that a lease assumption can create an obligation that survives discharge only if it is reaffirmed. Mather emphasizes that the provision says that "liability under the lease *will be* assumed"; in her view, the use of the future tense suggests that some further action—specifically, reaffirmation—must be completed before a lease assumption can effectively impose liability on the debtor. According to Mather, "it's no coincidence" that section 365(p) uses the same phrase ("will be") as the disclosure that must be given to a debtor who wishes to enter into a reaffirmation agreement, namely, that the debtor's "obligations will be determined by the reaffirmation agreement." 11 U.S.C. § 524(k)(3)(J)(i).

We think it probably is a coincidence. The phrase "will be" occurs more than 100 times in the Bankruptcy Code, mostly in contexts having nothing to do with either assumptions or discharges. The more natural explanation for the use of "will be" is not that the provision contemplates some separate future action, but rather that the future tense is dictated by the conditional clause that begins the sentence: "If" the debtor notifies the lessor within 30 days that the lease is assumed, then "the liability under the lease will be assumed by the debtor." The sentence uses "will be" because both events are expected to occur in the future.

Although the language of section 365(p) does not directly answer the question presented, three indications in the text and overall structure of the Code lead us to conclude that a lease assumption need not be reaffirmed in order to survive discharge. That interpretation is further supported by the settled understanding of assumptions under the pre-2005 version of section 365.

First, "[i]t is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). If lease assumptions do not survive discharge unless they are reaffirmed, then section 365(p) would be superfluous in at least two ways.

Most specifically, requiring debtors to reaffirm lease assumptions would make section 365(p)'s safe-harbor provisions superfluous. Section 365(p)(2)(C) clarifies that if the parties contact each other to negotiate an assumption agreement, their communications will not violate either the "stay under section 362 [or] the injunction under section 524(a)(2)." But the section 524 injunction exists only after discharge. 11 U.S.C. § 524(a)(2). If a lease assumption must be reaffirmed to survive discharge—a process that must be completed "before the granting of the discharge," *id*. § 524(c)(1)—then, logically, the negotiation of a lease assumption could never violate the post-discharge injunction. Under Mather's reading, section 365(p)'s protection against violating the discharge injunction would be surplusage.

More broadly, if every lease assumption must be reaffirmed to survive discharge, then section 524(c)'s more onerous requirements would displace section 365(p)'s more

informal ones. To initiate a lease assumption under section 365(p), a lessee need only write to the lessor. From there, the creditor may decide whether to agree to a lease assumption and whether to condition its agreement on cure; the debtor then has another chance to decide whether to assume the lease. 11 U.S.C. § 365(p)(2)(A)–(B). In contrast, section 524(c) dictates court involvement in most cases: the reaffirmation agreement must be "filed with the court," and under certain circumstances, the court must hold a hearing to inform the debtor that reaffirmation is not required and that the debt would otherwise be discharged. *Id.* § 524(c)(3), (d). If the Code requires a separate reaffirmation agreement in order to make a lease assumption effective, it is difficult to see how section 365(p)(2) serves any purpose.

Mather responds by arguing that a lease assumption must be reaffirmed under section 524(c) only if the parties want it to continue past discharge; otherwise, she says, the parties can simply agree to an assumption that lasts only until discharge, a creation she terms a "non-recourse lease." But that interpretation runs headlong into the same problems it purports to solve. Nothing in the text of sections 365(p) and 524(c) suggests the structure Mather proposes, and Mather does not explain how a "non-recourse lease"—which, by her definition, could be created only before discharge—avoids making surplusage of section 365(p)'s safe harbor for post-discharge negotiation. Nor can we see why a lessor would ever agree to enter into such an arrangement. An assumption that does not create personal liability for future lease payments would give the lessor nothing to compensate it for the debtor's continued use of the leased property and the depreciation of the property's value. No rational lessor would accept a "non-recourse lease" like the one Mather proposes: in this case, a lease that allows Mather to keep

using the Rav4 but prohibits Toyota from enforcing the lease terms against her if she breaches them.

Second, "it is a commonplace of statutory construction that the specific governs the general." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992)). Here, that principle supports the conclusion that section 365(p), which sets out procedures specifically applicable to individual debtors' assumptions of leases of personal property, should control over the more general reaffirmation procedures of section 524(c). Mather notes that section 524(c) "actually contains more procedural steps and more words" than section 365(p). But we do not measure specificity by the number of words in a provision. Section 524(c) is logically broader than section 365(p) because it governs many different types of agreements involving otherwise dischargeable debt, in contrast to the narrower issue of leases of personal property addressed by section 365(p).

Third, other provisions of the Bankruptcy Code suggest that lease assumptions under section 365(p) do not require reaffirmation under section 524(c). For example, section 362(h) requires individual debtors under some circumstances to indicate in their statement of intention whether they will "*either* redeem . . . personal property pursuant to section 722, enter into an agreement of the kind specified in section 524(c) applicable to the debt secured by such personal property, *or* assume such unexpired lease pursuant to section 365(p) if the trustee does not do so." 11 U.S.C. § 362(h)(1)(A) (emphasis added). As we have previously explained, that provision's use of "either . . . or" indicates that it designates distinct options. *In re Dumont*, 581 F.3d 1104, 1114 (9th Cir. 2009). The separate listing of

reaffirmation under section 524(c) and assumption under section 365(p) undermines the suggestion that a debtor opting for assumption must also pursue reaffirmation.

Our interpretation is also supported by section 524(k), which specifies the disclosures that must be provided to a debtor who elects reaffirmation. None of the required disclosures is well tailored to a lease assumption, and many of them—such as the "amount reaffirmed" and the interest rate—make little sense in that context. 11 U.S.C. § 524(k)(3)(C), (k)(3)(E). The mismatch between those disclosure requirements and leases of personal property is particularly striking because Congress added the disclosures to the Bankruptcy Code in 2005, at the same time that it added section 365(p). *See* BAPCPA § 203, 119 Stat. at 43–49. As the bankruptcy court correctly observed, "[i]t is illogical to assume that Congress would require reaffirmation in a personal property lease assumption situation yet require not a single disclosure relevant to a consumer lease."

The historical understanding of lease assumptions by a trustee further supports our conclusion that lease assumptions under section 365(p) are not subject to section 524(c)'s requirements for agreements "based on a debt that is dischargeable." Before the 2005 amendment, only a trustee could assume a lease once a debtor entered Chapter 7 bankruptcy. *See* 11 U.S.C. § 365(a), (d). When a trustee decided to assume a lease, that assumption was "in effect a decision to continue performance," and it "continue[d] the parties' rights to future performance under the contract or lease." *In re Penn Traffic Co.*, 524 F.3d 373, 378 (2d Cir. 2008). An assumed lease was assumed "subject to all of its provisions, including the *in personam* liabilities flowing from assumption." *Abdemur*, 587 B.R. at 172. Significantly,

the breach of an assumed lease became a post-petition debt under the Code—meaning that it was not dischargeable and was not subject to section 524(c)'s reaffirmation requirements. 11 U.S.C. § 365(g)(2). We see no reason to deviate from that understanding just because a debtor initiates the lease assumption rather than a trustee. *See Cohen v. de la Cruz*, 523 U.S. 213, 221 (1998) (refusing to "read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure") (quoting *Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 563 (1990)).

For similar reasons, we reject Mather's suggestion that section 365(p) provides statutory authorization for a form of "ride-through." Before 2005, ride-through permitted debtors to continue payments on a secured debt—most commonly, a car loan—and maintain possession through bankruptcy if they did not indicate that they planned to reaffirm the debt or redeem or surrender the collateral. We need not decide whether any form of "ride-through" survived the 2005 amendments, a question we previously left open. *See Dumont*, 581 F.3d at 1112 n.14. But we agree with Toyota that the limited circumstances in which courts have allowed ride-through after 2005 are not presented here because they involved secured loans, not leases. *See In re Moustafi*, 371 B.R. 434, 439 (Bankr. D. Ariz. 2007).

Finally, Mather argues that in light of the statute's broad consumer-protection purposes, it would be "ludicrous" to allow a Chapter 7 debtor—who might be unrepresented, though Mather was not—to bypass judicial review of a lease assumption when the Bankruptcy Code requires such review for reaffirmation agreements. We cannot depart from the most natural reading of the statutory text in order to advance our understanding of better policy. "[W]hen 'the statute's

language is plain, the sole function of the courts'—at least where the disposition required by the text is not absurd—'is to enforce it according to its terms.'" *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)).

The result here is hardly absurd, and the policy considerations are not as one-sided as Mather suggests. Not all agreements subject to section 524(c) require judicial approval. For example, under section 524(c)(6)(B), no court approval is required for agreements to reaffirm consumer debts secured by real property. We see no absurdity in allowing a debtor to assume a car lease without judicial approval when she can also reaffirm a home mortgage without judicial approval. In addition, we note that the provision of the 2005 statute adding section 365(p) was entitled, "Giving Debtors the Ability to Keep Leased Personal Property by Assumption." BAPCPA § 309(b), 119 Stat. at 82; *see INS v. Nat'l Ctr. for Immigrants' Rights, Inc.*, 502 U.S. 183, 189 (1991) ("[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text"). The section title indicates that the purpose of adding section 365(p) was to give debtors a way to continue using their leased vehicles—the most common type of leased personal property—during and after bankruptcy without engaging in the more onerous requirements of section 524(c). After all, in order to obtain a genuine fresh start after discharge, many debtors will need to keep their cars so that they can continue to work. Mather's interpretation would frustrate that purpose by eliminating the debtor-friendly option that Congress provided.

## III

We next consider whether the parties' failure to comply with the procedures of section 365(p) nullifies Mather's agreement to assume the Rav4 lease. We conclude that it does not.

Toyota and Mather agree that they followed only one of section 365(p)'s three procedural requirements. In order to assume a lease, (1) the debtor must "notify the creditor in writing that the debtor desires to assume the lease"; (2) the creditor may then "at its option, notify the debtor that it is willing to have the lease assumed by the debtor and may condition such assumption on cure of any outstanding default"; and (3) [i]f, not later than 30 days after notice is provided . . . the debtor notifies the lessor in writing that the lease is assumed," then "the liability under the lease will be assumed by the debtor and not by the estate." 11 U.S.C. § 365(p)(2)(A)–(B). Toyota notified Mather that it was willing to agree to Mather's lease assumption, satisfying step two. But Mather initially requested assumption in a phone call, not in writing (contrary to step one), and she did not return the lease assumption agreement within 30 days (contrary to step three).

Mather's failure to follow section 365(p)'s requirements cannot excuse her from the lease assumption to which she agreed. The Supreme Court has held that "absent some affirmative indication of Congress' intent to preclude waiver, . . . statutory provisions are subject to waiver by voluntary agreement of the parties." *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995); *accord Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1170 (9th Cir. 2006). To be sure, "a statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes

the statutory policy." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 704 (1945). Thus, we have held that provisions of the Bankruptcy Code protecting the interests of third parties may not be waived. *See*, *e.g.*, *In re Sun Runner Marine, Inc.*, 945 F.2d 1089, 1093–94 (9th Cir. 1991) (section 365(c)'s prohibition on assuming financial accommodation contracts benefits other creditors, and so may not be waived). But because a lease assumption under section 365(p) affects no other creditors' recovery, neither the Bankruptcy Code nor our case law prohibits waiver.

Nor do we have any difficulty concluding that the parties mutually waived section 365(p)'s writing and timing requirements here. After declaring her intent to reaffirm the Rav4 lease in her statement of intention, Mather initiated contact with Toyota by phone. The requirement that a request be in writing helps to ensure its genuineness and offers some protection against hasty or ill-considered requests. But Mather, who was represented by counsel, signed the lease assumption agreement after Toyota mailed it to her. She does not suggest that Toyota wrongfully induced her to call rather than write in the first instance, nor does she argue that she did not understand what she was agreeing to. And although Mather returned the agreement after the 30-day period, that time limit serves to protect lessors from belated agreements, so it was Toyota, not Mather, that had the right to reject the belatedly executed agreement. We will not excuse Mather from the obligations of her lease assumption agreement based on procedural defects that she created and benefited from during her bankruptcy.

**AFFIRMED**.