**In re GRUBB & ELLIS COMPANY, et al., Debtors.**

No. 12–10685 (MG).

United States Bankruptcy Court, S.D. New York.

Oct. 2, 2012.

Drinker Biddle & Reath LLP, By: Allen V. Farber, Esq., Kristin K. Going, Esq., New York, NY, for the Former Agents.

Togut, Segal & Segal LLP, By: Frank A. Oswald, Esq., Jonathan P. Ibsen, Esq., Melissa Iachan, Esq., New York, NY, for the Debtors and Debtors–in–Possession.

Alston & Bird LLP, By: Martin G. Bunin, Esq., John W. Spears, Esq., New York, NY, for the Official Committee of Unsecured Creditors.

*MEMORANDUM OPINION AND ORDER DENYING FORMER AGENTS' MOTION FOR ADMINISTRATIVE EXPENSES CLAIMS*

MARTIN GLENN, Bankruptcy Judge.

Pending before the Court is the *Motion of Former Agents for Allowance and Payment of Administrative Expense Claims* (the "Motion," ECF Doc. # 1167). Both the Debtor ("Debtor" or "Grubb & Ellis") and the Official Committee of Unsecured Creditors (the "Creditors Committee") filed objections (ECF Doc. ## 1608 and 1655, respectively). The Former Agents (defined below) filed a reply brief (ECF Doc. # 1675), and the Court heard argument on September 25, 2012. For the reasons explained below, the Court **DENIES** the Former Agents' Motion.

## I. BACKGROUND

On February 20, 2012 (the "Petition Date"), Grubb & Ellis and its affiliates filed voluntary chapter 11 petitions.

The Former Agents are eight real estate agents who previously worked for Grubb & Ellis either as employees or independent contractors—Charles Dilks, Andrew Klaff, Keith Lavey, Kurt Stout, Peter Rosan, Kevin McGloon, Bruce McNair, and Steve Morgan. All of the Former Agents except Steve Morgan terminated their employment with Grubb & Ellis before the Petition Date. Steve Morgan terminated his employment after the Petition Date.

Moreover, all of the Former Agents, except Steve Morgan and Bruce McNair, entered into a so-called "Termination Agreement" with Grubb & Ellis. Bruce McNair terminated his employment on February 13, 2012 pursuant to an "adequate justification" clause in an August 31, 2011 letter agreement with Grubb & Ellis. Steve Morgan does not appear to have had any written employment agreement with Grubb & Ellis.

A typical Termination Agreement between one of the Former Agents and Grubb & Ellis provides:

Compensation and Benefits During Employment.

(i) Compensation.... When commissions have been paid to [Grubb & Ellis] from the part[ies] for whom services are performed, a portion will thereafter be paid to you within reasonable time following the Company's receipt of such commissions.... In no event will the Company or any other member of the G & E Family be liable to you for commissions not collected, and the Company is entitled to waive or settle any commission claims, and otherwise decide whether or not to pursue collection of a commission.... You are not entitled to receive advances against commissions to be paid to you in the future, unless the Company agrees in writing to provide advances.

*See* Former Agents' Motion Ex. B. The Termination Agreement also stated that a former agent may only be paid for

> transactions closed before the Termination Date ... and for work which meets the definition of "Transaction" [which is] (a) a bona fide written offer to purchase or exchange which has been accepted in writing, with or without contingencies, prior to the Termination Date, or (b) a letter of intent or offer to lease, sublease or joint venture which has been accepted orally ... or in writing.

*See* Debtors' Objection Exs. C, D, E, O, Q and AA.

The Former Agents are entitled to a commission for each transaction in which the buyer or tenant was procured *before* the Petition Date. However, these Transactions also gave rise to commissions that were paid to the Debtors *after* the Petition Date.

The Former Agents argue that the commissions are not prepetition claims. According to the Former Agents, the contractual agreements between the parties indicated that the Former Agents did not have a claim against the Debtors for commissions unless and until the Debtors received payment from a third party. Therefore, the Former Agents argue that they never "earned" or had a right to payment of the commissions until payment was actually received by Grubb & Ellis—all of which occurred after the Petition Date.

The Debtors and the Creditors Committee argue that the Former Agents' claims for commissions are actually prepetition claims that would render them, at best, general unsecured claims. Debtors cite a plethora of relevant case law holding that, where a real estate broker procures a buyer or tenant prepetition, the broker's claim for commissions relating to that transaction is not entitled to administrative priority even when the right to payment arises postpetition. The Debtors also argue that even if the Former Agents could establish that their claims are based on postpetition transactions, the motion must still be denied because they fail to establish that they afforded any benefit to the Debtors' estate or that the Debtors induced them to act to provide benefits to the estate.

## II. DISCUSSION

According to the Bankruptcy Code, a claim is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5).

Section 503(b)(1)(A) of the Bankruptcy Code defines administrative expenses and provides in pertinent part that:

> After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—(1)(A) the actual, necessary costs and expenses of preserving the estate, including—(i) wages, salaries, and commissions for services rendered after the commencement of the case.

11 U.S.C. § 503(b)(1)(A)(i).

Courts in the Second Circuit use a two-part test to determine whether a specific claim qualifies as an administrative expense under section 503(b)(1)(A): first, there must be a postpetition transaction, making it a transaction between the debtor-in-possession and the creditor; and second, the estate must receive a benefit from the transaction. *See Trustees of the Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir.1986).

"Accordingly, an expense is administrative only if it arises out of a transaction between the creditor and the bank-

rupt's trustee or debtor in possession.... A debtor is not entitled to priority simply because the right to payment arises after the debtor in possession has begun managing the estate." *Id.* (citations omitted). Moreover, "the services performed by the claimant must have been 'induced' by the debtor-in-possession, not the pre-petition debtor." *In re Enron Corp.,* 279 B.R. 695, 705 (Bankr.S.D.N.Y.2002). A "benefit to the debtor-in-possession alone is not sufficient to warrant entitlement to an administrative claim priority as it would be contrary to this policy reason for allowing the priority." *Id.* (citing *Matter of Jartran, Inc.,* 732 F.2d 584, 590 (7th Cir.1984)). In other words, to qualify for administrative priority, a debtor's obligation to make a payment must have arisen out of a *postpetition* transaction between the creditor and the debtor. *In re BH S & B Holdings LLC,* 426 B.R. 478, 486–87 (Bankr. S.D.N.Y.2010).

■ When determining whether a broker's claim for a commission from a seller should be accorded administrative priority, bankruptcy courts focus on when the transaction or consideration giving rise to the claim occurred or was performed, and not the timing of the debtor's receipt of payment. "If the consideration was supplied pre-petition, the claim is not entitled to administrative priority even where the right to payment arises post-petition." *In re WorldCom, Inc.,* 308 B.R. 157, 166 (Bankr.S.D.N.Y.2004) (citing *Jartran* ); *see also In re Baths Int'l, Inc.,* 25 B.R. 538, 540 (Bankr.S.D.N.Y.1982) ("It is equally clear that a claimant who fully performs under a contract prior to the filing of the petition will not be entitled to first priority even though his services may have resulted in a direct benefit to the bankrupt estate after the filing"), *aff'd,* 31 B.R. 143 (S.D.N.Y.1983).

Courts have viewed a real estate broker's obligation as having been performed when the parties to a deal are brought together, not when the broker receives or has a right to receive payment. *See Coldwell Banker & Co. v. Godwin Bevers Co, Inc. (In re Godwin Bevers Co., Inc.),* 575 F.2d 805, 807–08 (10th Cir.1978); *In re Hackney,* 351 B.R. 179, 191 (Bankr. N.D.Ala.2006) (citing *In re HSD Venture,* 178 B.R. 831, 836 (Bankr.S.D.Cal.1995) (concluding that commissions due from seller to real estate brokers for prepetition efforts which resulted in postpetition contracts for sales of debtor-in-possession's condominium units being obtained would not be allowed as administrative expenses pursuant to 503(b)(3)(D))). *See also In re J.M. Fields, Inc.,* 22 B.R. 861, 865 (Bankr. S.D.N.Y.1982) (holding that even though commissions did not become payable until after the petition was filed, the commissions were a general unsecured claim because they were earned prepetition when a buyer was procured); *In re Moskovic,* 77 B.R. 421, 423 (Bankr.S.D.N.Y.1987) (denying administrative priority to a broker's claim where the broker obtained a purchaser for the debtor's real estate and executed the sale contract prepetition but the sale closed postpetition, holding that the broker earned his commission when he obtained the buyer prepetition); *In re Precision Carwash Corp.,* 90 B.R. 34, 38 (Bankr.E.D.N.Y.1988).

In this case, the buyers for the Transactions were all procured before the Petition Date. Indeed, many of these Transactions either closed or were on their way to closing before the Petition Date. The Former Agents' arguments cannot withstand the clearly-established case law that holds that commissions received postpetition for deals that were procured prepetition simply cannot be classified as administrative expense claims.

The Former Agents cite to cases holding that, at least in the nonbankruptcy context,

no claim for a portion of a shared commission lies until the primary broker receives payment. *See, e.g., William T. Bell & Assocs., LLP v. Pyramid Brokerage Co., Inc.*, 281 A.D.2d 943, 721 N.Y.S.2d 893, 894 (2001); *Sven Salen AB v. Jacq. Pierot, Jr. & Sons, Inc.*, 559 F.Supp. 503, 506 (S.D.N.Y.1983).[1] In arguing that this case law applies here, the Former Agents also attempt to distinguish away unfavorable cases by arguing that those cases, unlike the case now before the Court, involved brokers trying to collect postpetition commissions from *sellers* (not agents of the broker seeking to collect from the broker). The Court agrees with Debtors that this is a distinction without a difference. Moreover, no legal authority suggests that the agent of a broker should be treated any differently than the broker itself with respect to whether commissions paid out postpetition, when consideration for the deal accrued prepetition, should give rise to administrative expense claims.

The Former Agents also cite *Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.)*, 209 F.3d 125 (2d Cir.2000), for the proposition that the right to payment is the critical element in determining whether a claim exists. *See id.* at 129 (stating that a claim will be deemed prepetition if "the relationship between the debtor and creditor contained all the elements necessary to give rise to a legal obligation—'a right to payment' under the relevant non-bankruptcy law"). However, the issue in *Manville* concerned whether certain indemnification rights met the definition of "claims" and arose prepetition for purposes of their discharge by the bankruptcy confirmation, not whether these claims qualified for administrative priority. *Id.* at 128–29. In addition, as Debtors point out, the court acknowledged that "[t]he fact that the contingency in this case ... materialized post-petition *does not transmogrify the claim into a post-petition claim.*" *Id.* at 130 (citing *In re Chateaugay Corp.*, 102 B.R. 335, 352 (Bankr. S.D.N.Y.1989) (emphasis added)). The Former Agents' reliance on *Manville* is misplaced.

Lastly, the Former Agents cite this Court's *Memorandum Opinion Approving the Sale of Substantially All of the Debtor's Assets* (the "Sale Opinion") (ECF Doc. # 829), stating that "[t]he Debtors' contracts with their agents create the rights to payment of commissions to the agents, which may be general unsecured claims, priority claims, or administrative claims, depending on when the commissions are earned by the agents." Sale Opinion at 15. In addition to the fact that the Court was not deciding the issue it now faces, the Former Agents misconstrue this statement to mean that the Court has already ruled that the commissions, which are the subject of this dispute, must be considered administrative expense claims because the operative date is "when the commissions are earned by the agents." The Former Agents incorrectly assume this Court used the word "earned" to mean when commissions are actually paid out. The Court acknowledged that the claims arising out of commission payments "*may be general unsecured claims ... or administrative claims.*" The Court said nothing about whether the phrase "commissions earned by the agents" indicated that a commission

---

**1.** In their Motion, the Former Agents also compare the payment of commissions shared between brokers to severance payments. If the severance payments are earned at the time of the employee's dismissal (which they generally are), then they are entitled to administrative expense priority. *See Supplee v.* *Bethlehem Steel Corp.*, No. 04–CV–2413 (GBD), 2006 WL 510335, at *3, 2006 U.S. Dist. LEXIS 8029, at *8 (S.D.N.Y. Mar. 2, 2006). The Former Agents argue that, similarly, the commissions were only "earned" when the Debtors received the commissions. The Court finds this analogy untenable.

was "earned" when a right to payment arises, or when the consideration for the transaction accrues. The Former Agents take the Sale Opinion too far out of context.

### III. CONCLUSION

For all the reasons stated above, the Former Agents' Motion is **DENIED.**

**IT IS SO ORDERED.**

