**24-255-bk**

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

───────────

August Term, 2024

(Argued: October 23, 2024     Decided: February 3, 2025)

Docket No. 24-255-bk

───────────

IN RE: AVIANCA HOLDINGS S.A.**,**

*Debtor.*

───────────

AVIANCA HOLDINGS S.A.,

*Debtor-Appellant,*

— v. —

BURNHAM STERLING & COMPANY LLC and BABCOCK & BROWN SECURITIES LLC,

*Creditors-Appellees.*[*]

───────────

B e f o r e :

WESLEY, LYNCH, and KAHN, *Circuit Judges.*

───────────

[*] The Clerk of Court is respectfully directed to amend the official caption in this case to conform to the caption above.

———————————

Debtor-Appellant Avianca Holdings S.A. agreed to pay the Creditor-Appellees Burnham Sterling and Company LLC and Babcock & Brown Securities, LLC (the "Initiators") additional rental payments on a fixed schedule in 20 different aircraft leases. Avianca failed to pay certain of those additional rental payments that came due more than 60 days after Avianca filed for bankruptcy but before the leases were assumed or rejected. The Initiators accordingly moved to compel payment under 11 U.S.C. § 365(d)(5), which requires the debtor-in-possession to "timely perform all of the obligations of the debtor . . . first arising from or after 60 days after the order for relief . . . under an unexpired lease of personal property . . . until such lease is assumed or rejected." The bankruptcy court (Jones, *J.*) granted the motion, concluding that Avianca's obligation to pay first arose when the additional rental payments came due under the fixed schedule in the leases. Avianca appealed, and the district court (Failla, *J.*) affirmed. Avianca now appeals to us, arguing that its obligation to pay the additional rental payments first arose pre-petition when the leases were executed. For the reasons discussed below, we agree with the bankruptcy court and hold that the additional rental payments first arose as they came due under the leases' terms.

AFFIRMED.

———————————

MICHAEL F. HOLBEIN, (John G. McCarthy, *on the brief*), Smith, Gambrell & Russell, LLP, Atlanta, GA and New York, NY, *for* Debtor-Appellant Avianca Holdings S.A.

PETER FRIEDMAN, (Matthew P. Kremer and Nicole Molner, *on the brief*), O'Melveny & Myers LLP, New York, NY, *for* Creditors-Appellees Burnham Sterling and Company LLC and Babcock & Brown Securities LLC.

———————————

GERARD E. LYNCH, *Circuit Judge*:

When Debtor-Appellant Avianca Holdings S.A. filed for bankruptcy, it stopped paying Creditors-Appellees Burnham Sterling and Company LLC and Babcock & Brown Securities, LLC (the "Initiators") additional rental payments that it owed them under pre-set schedules contained in 20 unexpired airplane leases. Under those schedules, certain of those additional rental payments came due more than 60 days after Avianca filed for bankruptcy but before Avianca assumed or rejected the operative leases. The Initiators moved to compel payment of those additional rental payments on a priority basis under 11 U.S.C. § 365(d)(5). The bankruptcy court (David S. Jones, *J.*) granted the motion. On appeal, the district court (Katherine P. Failla, *J.*) agreed with the bankruptcy court's decision and affirmed. Avianca now appeals to us. For the reasons discussed below, we AFFIRM the judgment of the district court.

## BACKGROUND

Debtor-Appellant Avianca Holdings S.A., one of the largest Latin American airlines, filed for Chapter 11 bankruptcy on May 10, 2020, citing the COVID-19 pandemic as the cause for its financial distress. During the pendency of its bankruptcy, Avianca operated its airline business as a debtor-in-possession.

3

Accordingly, Avianca retained the statutory authority to decide whether to assume or reject its unexpired airplane leases, through which Avianca obtained "many of the aircraft it used to carry out its business operations." *In re Avianca Holdings S.A. ("Avianca I")*, 20-11133, 2023 WL 494255, at *2 (Bankr. S.D.N.Y. Jan. 26, 2023); *see* 11 U.S.C. §§ 365(a), 1107(a).[1] This appeal centers on the consequences of Avianca's failure to pay Creditor-Appellees Burnham Sterling and Company LLC and Babcock & Brown Securities, LLC (the "Initiators") fixed payments owed in exchange for the Initiator's brokerage services and due pursuant to unexpired airplane leases during the time between 60 days after the order for relief in its bankruptcy case and Avianca's decision to reject those leases.[2] Avianca nonetheless paid rent to the aircraft lessors pursuant to the same leases.

---

[1] The parties do not dispute the underlying facts found by the bankruptcy court. Accordingly, for purposes of resolving this appeal, we accept the bankruptcy court's factual findings as true.

[2] Avianca's "commencement" of its voluntary Chapter 11 case "constitute[d] [the] order for relief." 11 U.S.C. § 301(b); *see also Bell v. Bell (In re Bell)*, 225 F.3d 203, 209 (2d Cir. 2000) ("The commencement of a voluntary case under Chapter 11 constitutes an order for relief."). Accordingly, this opinion treats the petition date as the date of the order for relief.

## I.    The Unexpired Airplane Leases

To understand the parties' dispute, we start at the beginning of the contractual relationship between the Initiators and Avianca. Commencing in 2014, the Initiators provided brokerage services to Avianca, with the goal of securing suitable airplanes for Avianca to lease. The Initiators proved quite successful in this endeavor, brokering 20 aircraft leases on Avianca's behalf. The Initiators completed all that work before Avianca filed for bankruptcy. In other words, Avianca entered all 20 of the brokered airplane leases pre-petition and received no post-petition brokerage services from the Initiators.

Under the terms of the brokered aircraft leases, the Initiators were to be compensated for the already rendered brokerage services by payments, contractually characterized as "additional rental payment[s]," that Avianca was required to pay on a pre-set schedule over the lifetime of the lease. Motion to Compel Compliance ¶ 5, *In re Avianca Holdings S.A.*, No. 20-11133, 2023 WL 494255 (Bankr. S.D.N.Y. Jan. 26, 2023), ECF No. 2657. The leases deemed those additional rental payments to be the unconditional obligations of Avianca. As relevant to the instant appeal, Avianca paid the actual lessors of the aircraft for rent that came due under the leases' schedules. But Avianca failed to pay the

5

Initiators those additional rental payments - the brokers fees the parties contractually agreed to pay over time - that came due between 60 days after the petition date and before Avianca made the decision of whether to assume or reject the operative leases. Ultimately, over the course of two years, Avianca gradually rejected all 20 airplane leases under which it owed additional rental payments to the Initiators.

## II.    Proceedings Below

To safeguard their right to recover those additional rental payments, the Initiators filed proofs of claim and moved to compel Avianca to pay the balance due. The Initiators argued that their claims were entitled to priority treatment under 11 U.S.C. § 365(d)(5), which requires the debtor-in-possession to "timely perform all of the obligations of the debtor . . . first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property . . . until such lease is assumed or rejected."[3]

_____

[3] The Initiators also argued that their claims were entitled to priority treatment under 11 U.S.C. § 503(b)(1), which grants administrative expense priority to "the actual, necessary costs and expenses of preserving the estate." The bankruptcy court disagreed, holding that the Initiators were not entitled to an administrative expense claim because the Initiators did "not establish[] a post-petition transaction or benefit to the estate as required to support allowance of an administrative claim under section 503(b)." *Avianca I*, 2023 WL 494255, at *7.

The Initiators' position was that Avianca's obligation to pay the additional rental payments first arose as the payments came due under the leases' schedules, which was at least 60 days after the petition date. The Initiators did not seek priority treatment for payments that came due during the 60-day grace period.

Avianca objected. In its view, the "obligations" to pay the Initiators arose pre-petition, not 60 days after the petition date, because the Initiators rendered all of their brokerage services pre-petition and the payment terms in the leases were set prior to Avianca's bankruptcy filing. Avianca thus contended that the Initiators were entitled only to a general unsecured claim.

Ultimately, the bankruptcy court sided with the Initiators based on "both the plain meaning of [Section 365(d)(5)] and the commercial realities of the parties' arrangement." *Avianca I*, 2023 WL 494255, at *4. Specifically, the bankruptcy court observed that the statutory text "refers to plural 'all obligations' of the debtor 'arising' under 'a lease' (a singular noun)," which the bankruptcy court interpreted as "signal[ing] that each separate payment requirement under 'a' lease constitutes a separate 'obligation,' not merely one portion of a singular,

_____

Neither party appealed that portion of the bankruptcy court's decision, so it is not before us.

7

overarching 'obligation' embodied in the underlying lease document." *Id.* And per the terms of the leases, "no payment was due – and thus the debtor had no payment obligation as to any future scheduled payment – until and unless its due date was reached." *Id.* With those two observations in hand, the bankruptcy court concluded that Avianca's obligation to pay the relevant additional rental payments arose, for purposes of Section 365(d)(5), on the dates specified in the schedule in the leases. *Id.* at *4–5. Accordingly, the bankruptcy court granted the Initiators' motion to compel and ordered Avianca to pay the Initiators $4,338,484.66. *See Avianca I*, 2023 WL 494255, at *1, 8; Order at 2, *In re Avianca Holdings S.A.*, No. 20-11133 (Bankr. S.D.N.Y. Jan. 31, 2023), ECF No. 2714.

Avianca appealed that decision to the district court. The district court affirmed the bankruptcy court's decision, concluding that "[t]he natural reading of the statute, in concert with the text of the Lease Agreements, dictates that [Avianca's] obligation to make the disputed payments arose when each such payment came due." *In re Avianca Holdings S.A.*, 23 Civ. 1211, 2023 WL 9016495, at *5, *8 (S.D.N.Y. Dec. 29, 2023). The district court added that Avianca's obligation to pay the full amount owed followed "their strategic decision to neither reject nor assume the [l]eases during the prescribed sixty-day grace

8

period." *Id.* at *7. Had Avianca acted within that grace period, the Initiators would have been left with an unsecured pre-petition claim. *See id.* This timely appeal ensued.

## DISCUSSION

This appeal presents a single question: did Avianca's obligation to pay the additional rental payments "first aris[e] from or after 60 days after the order for relief in a case under chapter 11 of this title"? *See* 11 U.S.C. § 365(d)(5)**.** Avianca contends that the answer is no because its payment obligations arose pre-petition when the leases were executed and the Initiators services were complete. The Initiators, on the other hand, insist that the answer is yes because Avianca's payment obligations arose as the additional rental payments came due under the payment schedules in the aircraft leases. Ultimately, the parties' dispute centers on the proper interpretation of Section 365(d)(5), an issue of law we review *de novo*. *See Anderson v. Credit One Bank, N.A. (In re Anderson)*, 884 F.3d 382, 387 (2d Cir. 2018). For the reasons discussed below, we agree with the Initiators and hold that Avianca's "obligations" to pay the relevant additional rental payments arose when they came due pursuant to the leases.

## I. Statutory Background

To contextualize the narrow legal issue we are tasked with resolving, it is necessary to understand the basic mechanics of assumption and rejection. As a general rule, a debtor-in-possession is permitted to "assume or reject any executory contract or unexpired lease of the debtor" with the bankruptcy court's approval. *COR Route 5 Co., LLC v. Penn Traffic Co. (In re Penn Traffic Co.)*, 524 F.3d 373, 378 (2d Cir. 2008). Assumption means that the debtor is electing to "continue performance," *id.*, while rejection means the debtor is "repudiating any further performance of its duties," *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 374 (2019). The debtor-in-possession is granted such flexibility so that it may reject contracts that are "burdensome" to the estate but assume beneficial contracts when it would like to "force [its contractual counterparties] to continue to do business with it when the bankruptcy filing might otherwise make them reluctant to do so." *Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 954–55 (2d Cir. 1993) (quotation marks omitted); *see also ReGen Cap. v. Halperin (In re Wireless Data, Inc.)*, 547 F.3d 484, 488 (2d Cir. 2008).

Assumption and rejection have vastly different consequences for a debtor's contractual creditors. Section 365 of the Bankruptcy Code delineates those

consequences for "executory contracts," generally, and "unexpired leases," more specifically. If the debtor assumes an executory contract, the debtor must cure, or provide adequate assurances that it will cure, most outstanding contractual defaults. *In re Penn Traffic*, 524 F.3d at 378; 11 U.S.C. § 365(b)(1)(A). And once assumed, the debtor must pay the amounts that come due under the contract as administrative expenses of the estate. *See N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531–32 (1984); *Chateaugay*, 10 F.3d at 955. On the other hand, if a debtor rejects an executory contract, the rejection is treated as a breach of that contract that occurred "immediately before the date of the filing of the petition." 11 U.S.C. § 365(g)(1); *see also Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 387 (2d Cir. 1997); 11 U.S.C. § 502(g)(1). As a result, a creditor whose claim arises from a rejected executory contract will have only "an unsecured prepetition claim against the estate" for the breach. *In re Penn Traffic*, 524 F.3d at 378; *see also Mission Prod. Holdings*, 587 U.S. at 374. The ultimate result is that a creditor owed payment under an assumed contract is in a much better position to recover in full than a creditor owed payment under a rejected contract.

Although the decision of assumption or rejection has rippling consequences for creditors, the debtor is generally not required to make a

decision about its executory contracts immediately after filing for Chapter 11, or even within any set time frame before plan confirmation. *See* 11 U.S.C. § 365(d)(2); *Theatre Holding Corp. v. Mauro*, 681 F.2d 102, 104–05 (2d Cir. 1982). Consequently, as occurred here, time will often elapse between when the debtor files for bankruptcy and when the debtor makes a decision with respect to its assumption or rejection of certain contracts. During that waiting period, creditors sit in limbo with respect to the ultimate status of their executory contracts with the debtor, as the automatic stay prevents creditors from terminating those contracts. *See Lehman Bros. Special Fin. Inc. v. Branch Banking & Trust Co. (In re Lehman Bros. Holdings, Inc.)*, 970 F.3d 91, 101–02 (2d Cir. 2020). And, generally speaking, those creditors will receive a payment during this waiting period only "[i]f the debtor-in-possession elects to continue to receive benefits from" them under the contract. *Bildisco & Bildisco*, 465 U.S. at 531. However, in such circumstances, "the debtor-in-possession is obligated to pay [only] for the reasonable value of those services," which may or may not equal the amount "specified in the contract." *Id.*

Creditors owed money under unexpired leases of nonresidential real property or personal property, however, are granted enhanced protections

during the waiting period following the initial bankruptcy filing. For those types of unexpired leases, the debtor must resume making any contractually-set payments that arise after a certain period of time during the bankruptcy before the relevant lease is assumed or rejected, regardless of whether the debtor is receiving a post-petition benefit. *See* 11 U.S.C. § 365(d)(3), (d)(5). Specifically, for unexpired leases of nonresidential real property, the debtor-in-possession must "timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." 11 U.S.C. § 365(d)(3). Similarly, for unexpired leases of personal property, Section 365(d)(5) requires the debtor-in-possession to:

> timely perform all of the obligations of the debtor, except those specified in section 365(b)(2), first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property . . . until such lease is assumed or rejected notwithstanding section 503(b)(1) of this title, unless the court, after notice and a hearing and based on the equities of the case, orders otherwise with respect to the obligations or timely performance thereof.

11 U.S.C. § 365(d)(5).

Given the above statutory scheme, the Initiators' sole path to a priority claim here is through Section 365(d)(5), rather than Section 503(b), because it is undisputed that the Initiators did not provide any post-petition services to Avianca. However, that requires the Initiators to show that Avianca's obligation to pay the additional rental payments first arose at least 60 days after the petition date. Otherwise, the Initiators will be left holding a general unsecured claim for the breach of the operative leases. The distinction between a priority claim and a general unsecured claim will be consequential for the Initiators, as it is the difference between payment in full and recovering pennies on the dollar.

## II.     When Obligations Arise Under 11 U.S.C. § 365(d)(5)

With the basic mechanics and stakes clarified, we turn to the immediate task at hand: interpreting the text of Section 365(d)(5) to determine when Avianca's obligation to pay the additional rental payments arose. At first glance, the question seems straightforward, but lurking beneath the surface is a deep, pre-existing split of authority regarding the proper method for determining when a debtor's obligation arises.[4] On the one hand, the "accrual" approach,

---

[4] The split has crystallized in the context of Section 365(d)(3), applicable to leases of real property, which is similar to Section 365(d)(5) in relevant part in that it also requires the debtor-in-possession to "timely perform all the obligations of

which aligns with Avianca's position on appeal, requires the debtor to pay only those obligations that accrued post-petition, irrespective of when those obligations come due under the operative lease.[5] On the other hand, the "billing date" approach, which the Initiators advocate here, requires the debtor to pay obligations once they come due under the operative lease, regardless of when the obligation can be said to have accrued.[6]

---

the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected."11 U.S.C. § 365(d)(3); *see CIT Communications Fin. Corp. v. Midway Airlines Corp. (In re Midway Airlines Corp.)*, 406 F.3d 229, 234 (4th Cir. 2005) (noting the statutory provision applicable to unexpired leases of personal property "is modeled on a very similar provision of the Code, § 365(d)(3).").

[5] *See In re Ames Dep't Stores, Inc.*, 306 B.R. 43, 63–65 (Bankr. S.D.N.Y. 2004); *Child World, Inc. v. Campbell/Mass. Trust (In re Child World, Inc.)*, 161 B.R. 571, 573–77 (S.D.N.Y. 1993); *Newman v. McCrory Corp. (In re McCrory Corp.)*, 210 B.R. 934, 939–40 (S.D.N.Y. 1997); *In re Stone Barn Manhattan LLC*, 398 B.R. 359, 365–68 (Bankr. S.D.N.Y. 2008); *In re Victory Mkts., Inc.*, 196 B.R. 6, 8–10 (Bankr. N.D.N.Y. 1996); *In re Door to Door Storage, Inc.*, C17-1385, 2018 WL 1899361, at *2 (W.D. Wash. Apr. 20, 2018); *El Paso Props. Corp. v. Gonzales (In re Furr's Supermarkets, Inc.)*, 283 B.R. 60, 62 (B.A.P. 10th Cir. 2002); *In re Handy Andy Home Improvement Ctrs., Inc.*, 144 F.3d 1125, 1126–29 (7th Cir. 1998).

[6] *See Centerpoint Props. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 268 F.3d 205, 209–12 (3d Cir. 2001); *Burival v. Creditor Comm. (In re Burival)*, 406 B.R. 548, 550, 551–54 (B.A.P. 8th Cir. 2009); *Koenig Sporting Goods, Inc. v. Morse Road Co. (In re Koenig Sporting Goods, Inc.)*, 203 F.3d 986, 989–90 (6th Cir. 2000); *Bullock's Inc. v. Lakewood Mall Shopping Ctr. (In re R.H. Macy & Co., Inc.)*, 93 Civ. 4414, 1994 WL 482948, at *10–13 (S.D.N.Y. Feb. 23, 1994) (Sotomayor, J.);

In addressing this question, we begin with the text of the relevant provision. Section 365(d)(5) states, in relevant part, that the debtor-in-possession "shall timely perform all of the obligations of the debtor . . . first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property . . . until such lease is assumed or rejected notwithstanding section 503(b)(1) of this title." 11 U.S.C. § 365(d)(5). The crux of the parties' dispute hinges on the meaning of the word "arise." Avianca contends that an obligation arises when it becomes unconditional, which in this case was when the leases were executed pre-petition. The Initiators, meanwhile, argue that an obligation arises when it comes due under the terms of the lease, which here was more than 60 days after the petition date, per the fixed schedule in the leases.

At first blush, both parties have put forward plausible interpretations of the word "arise" because Section 365(d)(5) does not explicitly specify when an obligation can be said to have arisen. Where particular words are susceptible to multiple interpretations, "we must . . . 'interpret the relevant words not in a

---

*Urban Retail Props. v. Loews Cineplex Ent. Corp.*, 01 Civ. 8946, 2002 WL 535479, at *5–8 (S.D.N.Y. Apr. 9, 2002); *HA-LO Indus., Inc. v. CenterPoint Props. Trust*, 342 F.3d 794, 796, 798–800 (7th Cir. 2003).

vacuum, but with reference to the statutory context,'" which includes the terms surrounding the relevant words. *Torres v. Lynch*, 578 U.S. 452, 459 (2016), quoting *Abramski v. United States*, 573 U.S. 169, 179 (2014); *see Southwest Airlines v. Saxon*, 596 U.S. 450, 455 (2022). Situating Section 365(d)(5) in its appropriate statutory context, we conclude that an obligation first "arises" when payment comes due under the terms of a lease.

We find two contextual clues most helpful in this endeavor. First, Subsection 365(d)(5) requires the debtor to "timely perform" its obligations. 11 U.S.C. § 365(d)(5). "Perform" means "to carry into effect, [or] discharge (a service, duty, etc.)." *Perform*, OXFORD ENGLISH DICTIONARY, https://www.oed.com/search/dictionary/?scope=Entries&q=perform (last visited Jan. 9, 2025); *see also Perform*, MERRIAM WEBSTER UNABRIDGED, https://unabridged.merriam-webster.com/unabridged/perform (last visited Jan. 9, 2025) ("to adhere to the terms of: treat as an obligation: implement, fulfill"). The use of the word "perform," therefore, is telling, as it requires the existence of some presently existing duty that the debtor must fulfill. Second, when Section 365(d)(5) refers to the debtor's "obligations," what it means is "[a]n act or course of action to which a person is . . . legally bound," *Obligation*, OXFORD ENGLISH

17

DICTIONARY,
https://www.oed.com/search/dictionary/?scope=Entries&q=obligation (last
visited Jan. 9, 2025). *See also Obligation*, MERRIAM WEBSTER UNABRIDGED,
https://unabridged.merriam-webster.com/unabridged/obligation (last visited Jan.
9, 2025) ("a duty arising by contract: a legal liability").

With those other terms in mind, the phrase "first arising from or after 60
days after the order for relief," 11 U.S.C. § 365(d)(5), is best understood as
specifying that the duty the debtor must perform has to "originate from" or
"come into being" under an unexpired lease of personal property 60 days after
the order for relief or later. *See Arise,* MERRIAM WEBSTER UNABRIDGED,
https://unabridged.merriam-webster.com/unabridged/arise (last visited Jan. 10,
2025)*; see also Arise*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("To originate; to
stem (from)" or "[t]o result (from)"). Otherwise, there would be no presently
existing duty for the debtor to perform. Putting it all together then, Section
365(d)(5) requires the debtor-in-possession to perform the debtor's contractual
duties that come into being under an unexpired lease of personal property at
least 60 days after the order for relief. That is the "billing date" approach.

18

The broader statutory scheme confirms that we have landed on the appropriate interpretation of the text. First, our approach recognizes the critical difference between when a creditor's claim arises and when a debtor's obligation arises, while Avianca's position conflates them. Second, our interpretation comports with the statutory directive that a creditor is entitled to payment under Section 365(d)(5) (the specific rule applicable to leases of personal property) without complying with the requirements of Section 503(b)(1) (a general provision covering administrative expenses of the bankruptcy estate), while Avianca's approach would reimpose Section 503(b)(1)'s requirement that there be a post-petition benefit to the estate.

To understand the first structural point, we provide a brief overview of how the Bankruptcy Code instructs us to determine whether a creditor's claim has arisen pre-petition. We start with the statutory definitions of "creditor" and "claim." A "creditor" is an "entity that has a *claim* against the debtor that *arose at the time of or before the order for relief concerning the debtor*," 11 U.S.C. § 101(10)(A) (emphasis added), and a "claim" is defined, in relevant part, as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed,

legal, equitable, secured or unsecured," 11 U.S.C. § 101(5)(A). In other words, "[a] claim is (1) a right to payment (2) that arose before the filing of the petition." *Elliott v. Gen. Motors LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 156 (2d Cir. 2016). We have explained that "[a] claim will be deemed to have arisen pre-petition if the relationship between the debtor and the creditor contained all of the elements necessary to give rise to a legal obligation – 'a right to payment' – under the relevant non-bankruptcy law." *Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.)*, 209 F.3d 125, 129 (2d Cir. 2000) (quotation marks omitted). As applied specifically to contractually grounded claims, we have held, for example, that a contractual right to indemnification was a claim arising pre-petition because "[u]nder contract law, a right to payment based on a written indemnification contract arises at the time the indemnification agreement is executed." *Id.*

That explanation lays bare Avianca's gambit on appeal. Avianca's position, that its obligation arose pre-petition because the obligation to pay the Initiators was unconditional upon execution of the leases, mirrors almost exactly the logic for determining whether a contractual *claim* has arisen pre-petition. But we must be mindful that Section 365(d)(5) speaks in terms of the *debtor's obligations*, not the

20

*creditor's claims*. That is because "Congress's use of 'certain language in one part of the statute and different language in another' can indicate that 'different meanings were intended.'" *Sebelius v. Auburn Regional Med. Ctr.*, 568 U.S. 145, 156 (2013), quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004); *see also Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("In a given statute, the same term usually has the same meaning and different terms usually have different meanings."). We accordingly decline Avianca's invitation to adopt a reading of Section 365(d)(5) that would conflate when a creditor's claim arises with when a debtor's obligation arises. Instead, to account for the variation in terminology, we apply a different test to determine when a debtor's obligation arises, namely, whether payment has come due under the terms of the lease.

We now turn to the second structural point: that Section 365(d)(5) should be interpreted to impose different requirements for priority treatment than those imposed by Section 503(b)(1) for administrative expense priority. Section 365(d)(5) explicitly requires priority payment of the debtor's obligations first arising 60 days post-petition "*notwithstanding* section 503(b)(1) of this title." 11 U.S.C. § 365(d)(5) (emphasis added). The text therefore exempts creditors from the following requirements under Section 503(b)(1): providing notice; attending a

21

hearing; and showing that the payments at issue constitute "the actual, necessary costs and expenses of preserving the estate," meaning that the debtor received a post-petition benefit from the creditor's services. 11 U.S.C. § 503(b)(1)(A); *Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.*), 78 F.3d 18, 22 (2d Cir. 1996); *Supplee v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.)*, 479 F.3d 167, 172 (2d Cir. 2007). Avianca's position, "that the estate should not bear an expense for which it receives no benefit," Appellant Br. at 17, advocates for a post-petition benefit requirement. That position is directly at odds with the text of Section 365(d)(5).

Avianca's veiled advocacy for the imposition of a post-petition benefit requirement reveals an even deeper flaw with the accrual approach. The accrual approach "adhere[s] to the long-standing, pre-1984 practice of prorating payment of a debtor's obligations under a lease, regardless of the billing date" that developed under Section 503(b)(1). *McCrory*, 210 B.R. at 937. Adherence to such a past practice, however, is proper only if Congress has not provided "a clear indication that [it] intended . . . a departure" from past practice. *Hamilton v. Lanning*, 560 U.S. 505, 517 (2010), quoting *Travelers Casualty & Surety Co. of America v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 454 (2007). Here, we read the language of Section 365(d)(5), with its express provision that it applies

"notwithstanding [S]ection 503(b)(1)," as providing precisely such a clear and explicit instruction to depart from the prior practice under the latter provision.[7] Section 365(d)(5) breaks with the requirements of Section 503(b)(1) and refocuses the relevant inquiry on whether the debtor has a performance obligation, instead of on whether the debtor receives a post-petition benefit. In sum, we conclude that the "billing date" approach, not the accrual approach, best comports with the broader statutory scheme.

Finally, our interpretation of Section 365(d)(5) aligns with sound bankruptcy policy, despite Avianca's protestations to the contrary. At bottom, "the purpose [of] § 365 is to balance the state law contract right of the creditor to receive the benefit of his bargain with the federal law equitable right of the debtor to have an opportunity to reorganize." *Coleman Oil Co. v. Circle K Corp. (In re Circle K Corp.*), 190 B.R. 370, 376 (B.A.P. 9th Cir. 1995). Balances, of course, can be struck in different ways. As the House Report explains, Section 365(d)(5), in

---

[7] We further note that Section 365(d)(5) was added to the code in 1994, *after* Section 503(b)(1) had already been promulgated as part of the initial restructuring of the Bankruptcy Code in 1978. *See* Bankruptcy Reform Act of 1994, Pub. L. 103-394, § 219, 108 Stat. 4106, 4128–29; Bankruptcy Act of 1978, Pub. L. 95-598, § 503, 92 Stat. 2549, 2581. That provides additional evidence that Congress enacted Section 365(d)(5) to exempt creditors under unexpired leases of personal property from the requirements of Section 503(b)(1).

particular, was designed to tip the balance slightly in favor of creditor protection

as compared to the baseline rules set out elsewhere in the Code:

> Under current law, when a debtor files for bankruptcy, it has an unspecified period of time to determine whether to assume or reject a lease of personal property. Pending a decision to assume or reject, lessors are permitted to petition the court to require the lessee to make lease payments to the extent use of the property actually benefits the estate. Section 220 responds to concerns that this procedure may be unduly burdensome on lessors of personal property, while safeguarding the debtors ability to make orderly decisions regarding assumption or rejection. The section amends section 365(d) to specify that 60 days after the order for relief the debtor must perform all obligations under an equipment lease, unless the court, after notice and a hearing and based on the equities of the case, orders otherwise. This will shift to the debtor the burden of bringing a motion while allowing the debtor sufficient breathing room after the bankruptcy petition to make an informed decision.

H.R. Rep. No. 103-835, at 50 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 3340, 3359.

Accordingly, Section 365(d)(5) is best understood as a specific intervention

that grants creditors under unexpired leases of personal property priority

treatment, over other general unsecured creditors, and that shifts the burden to

the debtor to bring a motion if that priority treatment will result in inequities in

order to ameliorate the unique burdens that creditors under unexpired leases of

personal property face. Specifically, Section 365(d)(5) requires the debtor to

automatically resume making timely payments under its unexpired personal

property lease for obligations that arise 60 days post-petition, without the relevant creditors seeking priority treatment.

At the same time, however, the debtor is granted two safety valves in case the automatic resumption of payments interferes with the administration of the estate. The first is that the debtor has a 60 day grace period during which it can make a decision about assumption or rejection before it has to resume making timely payments under the lease. The second is that the debtor can petition the bankruptcy court for a hearing to amend its payment obligations after the 60 day grace period elapses. At such a hearing, the debtor could raise the exact concern that Avianca emphasizes as supporting its position on appeal: that resuming payments would constitute a windfall to certain creditors who completed all their services pre-petition.

Tellingly, Avianca chose not to use either of the safety valves that Congress built into Section 365(d)(5) to remedy any inequities that may stem from requiring it to resume making its payments under the terms of the aircraft leases. Instead, Avianca decided to pick and choose amongst its contractual creditors, paying the lessors of the aircraft but not the Initiators, and then cried foul after the fact by raising the specter of an undue windfall to the Initiators at the expense

25

of other general unsecured creditors. To the extent any windfall exists, it is the result of Avianca's own choice not to assume or reject the unexpired leases promptly or petition for a hearing to amend its payment obligations to the Initiators after the grace period expired. We decline Avianca's invitation to bend the statutory language beyond recognition to save Avianca from the consequences of its own choices which will require it to pay the Initiators on a priority basis. Therefore, we hold that the billing date approach is the approach most consistent with the text of Section 365(d)(5), the Bankruptcy Code as a whole, and sound bankruptcy policy.

## CONCLUSION

We have considered the Avianca's remaining arguments and find them to be without merit. We accordingly AFFIRM the judgment of the district court.

26